586 So.2d 1200 (1991)
John WADE, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1582.
District Court of Appeal of Florida, First District.
September 16, 1991.
*1201 James C. Banks, Special Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Bradley R. Bischoff, Asst. Atty. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
John Wade appeals his conviction of attempted sexual battery on a child twelve years of age or under. We reverse and remand for a new trial.
We agree with appellant's contention that the trial court committed reversible error in not making sufficient specific findings of fact as a basis for its determination that the child was competent to testify.
The State charged the offense took place between September 1, 1987 and September 1, 1988. During this time the defendant and his family were neighbors of the child and her family. The charge was triggered by a surprise response the child made in March or April of 1989 to her grandmother upon being admonished by her.
Out-of-court statements were made by the child in May 1989 to a deputy sheriff and to a doctor on the Child Protection Team which were permitted into evidence over defendant's objection.
Regarding the child's in-court testimony on February 13, 1990, a transcript of the entire colloquy (after the child gave her name) wherein the child was determined competent to testify, is as follows. The child's name has also been omitted from this report of the colloquy.
Q: Are you in school, honey?
A: Yes.
Q: What grade are you in?
A: First
Q: You're in first grade. Who is your teacher?
A: Miss Toy (phonetic).
Q: What's your teacher's name?
A: Miss Toy.
Q: Do you like her?
A: Yes
Q: Do you like school?
A: Yes.
Q: Do you have P.E.?
A: Yes.
Q: What's that? Is it like gym?
A: Yeah.
Q: Okay. Do you have coaches in gym, in P.E.?
A: Yes.
Q: What do the coaches do?
A: They help me.
Q: Do they make sure nobody gets hurt?
A: Yes.
Q: Okay. Do you know your colors?
A: Uh-huh.
Q: You've got a pretty ribbon in your hair. Do you know what color that is?
A: Uh-uh, I can't see it.
Q: You can't see it. What color is your shirt?
A: Black.
Q: Okay. And what color is your pretty little skirt there?
A: Red and black.
Q: And you told us you like school, right? And your favorite part is gym, P.E.?

*1202 A: Yes.
Q: How are you doing in school?
A: Okay.
Q: Do you like it?
A: Yes.
Q: How old are you now, hon?
A: I'm six.
Q: Six and a half?
A: Yeah.
Q: Six and a half. Can you do something for me?
A: Uh-huh.
Q: Will you? I'm going to ask you if you will promise to tell us the truth today, okay? Will you do that?
A: Yes.
Q: Will you raise your right hand for me?
A: (Indicating.)
Q: Okay. Your other right one. Thank you. Do you promise to tell the truth today?
DEFENSE: Judge, I object. Her competency has not been ruled on by this Court, and Mr. Cupp is not qualified to administer the oath in a trial where he is prosecuting attorney.
PROSECUTOR: I think, as an officer of the court, I can establish to the Court and the jury that she can promise to tell the truth here.
DEFENSE: I want to voir dire the witness.
THE COURT: When you get to that point, let Mr. Ellis voir dire.
PROSECUTOR: Mr. Ellis is going to ask you some questions, okay?
THE WITNESS: Okay.

VOIR DIRE EXAMINATION
BY DEFENSE COUNSEL:
Q: How are you doing?
A: Fine.
Q: That's good and loud. I like that. Did Santa Claus come to see you this year in Winter Haven? Is that where you live?
A: Yeah.
Q: Is that the same Santa Claus that came to see you in Lake City, or is that a different Santa Claus?
A: A different Santa Claus?
Q: Do they look the same, or do they look different?
A: They look different.
Q: Can you tell me how they look?
A: (Witness shakes head.)
Q: Did you actually see them?
A: Not that good.
Q: Could you tell me where you saw them?
A: In the living room.
Q: Excuse me, honey.
A: In the living room.
Q: Okay. Was Santa Claus good to you this year and bring you a lot of toys?
A: Yeah.
Q: Was he good to you when you lived in Lake City, too?
A: Uh-huh.
Q: Does the Easter Bunny bring you a basket at Easter time?
A: Yeah. I got two last year.
Q: Have you ever told somebody something that wasn't true?
A: No.
Q: Have you ever been spanked for saying something that your mother said wasn't true?
A: Uh-uh.
Q: I can't hear you, honey.
A: No.
Q: Have you ever been punished in some other way by your mother or your grandmother for doing something that they said was bad?
A: No.
Q: So you have always been a good little girl, haven't you?

*1203 A: Yes.
DEFENSE: Your Honor, I would object, based on the grounds of 
PROSECUTOR: May I briefly ask her one or two more questions?
THE COURT: Yes.

DIRECT EXAMINATION

(Continuing)
BY PROSECUTOR:
Q: ____, do you know the difference between a truth and a lie?
A: Yes.
Q: What happens to you when you tell a lie?
A: You will probably get in a lot of trouble.
Q: It it good or bad to tell the truth?
A: Good
Q: Are you going to tell the truth here today, as best you know how?
A: Yes.

VOIR DIRE EXAMINATION
BY DEFENSE COUNSEL:
Q: ____, did Mr. Cupp tell you to tell us that here today? Did he talk to you yesterday? Scott here, did he talk to you yesterday?
A: Yes.
Q: Did he tell you to tell us that here today when he asked you that?
A: I don't remember.
Q: Did he talk to you about the difference between the truth and a lie?
A: No.
Q: Can you tell us the difference?
PROSECUTOR: Judge, I think she just did.
THE COURT: ____, you can answer the question. Tell us again the difference between the truth and a lie.
THE WITNESS: You will get in  it's bad to tell a lie, because it ain't good to tell a lie.
PROSECUTOR: If I tell you that your shirt is red, is that the truth or a lie?
THE WITNESS: A lie.
The trial court overruled the appellant's objection. The court stated:
I think that is  the issue of credibility is for the jury, and I understand what Mr. Ellis is saying. It's just that I'm going to find that she is competent to testify, and by that I mean she knows the difference between right and wrong, and that she has the apparent ability to recollect the facts about which she is going to testify, and I'll let  the rest will have to go on a credibility issue. Okay.
We find the trial court abused its discretion in finding that the child was competent to testify. The trial court failed to make sufficient specific findings of fact to justify its finding. We reverse on the authority of Griffin v. State, 526 So.2d 752 (Fla. 1st DCA 1988). In Griffin this court held that before finding a child competent to testify, "the trial court should consider (1) whether the child is capable of observing and recollecting facts, (2) whether the child is capable of narrating those facts to the court or to a jury, and (3) whether the child has a moral sense of the obligation to tell the truth." Id. at 753 (citing Lloyd v. State, 524 So.2d 396 (Fla. 1988), and sections 90.603(2) and 90.605(2), Florida Statutes (1985)). In this case, as in Griffin, the competency determination was of increased significance because the critical facts are totally dependent on the child's ability to observe and recollect.
In the case sub judice, although the child was asked to recollect facts during the competency determination, the questions were mostly directed towards recently observed events. The child was asked a few questions about Santa Claus and the Easter Bunny; but otherwise there was no attempt to demonstrate during voir dire that the child was capable of recollecting events which occurred between eight months and two years prior. Although the child was "relatively articulate and intelligent, she *1204 was not unequivocally capable of separating fact from fantasy." Griffin, 526 So.2d at 755.
It is possible that a child who cannot separate fact from fantasy may nevertheless understand the moral obligation to tell the truth. Id. at 754 (citing section 90.605(2), Florida Statutes (1985)). However, the substance of the questions posed to the child in the case sub judice did not elicit any indication the child felt such a moral obligation. Similar to the voir dire in Griffin, the colloquy during the competency determination suggests the child knew what a lie is and that it is bad; but knowing the difference between the truth and a lie does not impute a moral obligation or sense of duty to be truthful.
The child's first statement about the matter came months after the alleged offense and was not spontaneous but was in response to an instruction or reprimand the child's grandmother had given the child many times. Such circumstances are indicative of neither spontaneity nor reliability.
As in Griffin, the child's statements were not made at the first available opportunity after occurrence of the alleged incident. We further observe there are troubling contradictions in the child's out-of-court statements and her testimony in court, reflecting not only on her credibility but also on the reliability and competence of her testimony.
It is not necessary to address in detail the remaining points on appeal. We find that the trial court's reasons for admitting the child's out-of-court statements are also not sufficient to satisfy the requirements of section 90.803(23)(a), Florida Statutes, 1987, which states:
the following are not inadmissible as evidence, even though the declarant is available as a witness:
... .
(23) HEARSAY EXCEPTION; STATEMENT OF CHILD VICTIM OF SEXUAL ABUSE OR SEXUAL OFFENSE AGAINST A CHILD 
(a) Unless the source of information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness, an out-of-court statement made by a child victim with a physical, mental, emotional, or developmental age of 11 or less describing any act of child abuse, sexual abuse, or any other offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child, not otherwise admissible, is admissible in evidence in any civil or criminal proceeding if:
1. The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate; and
2. the child either:
a. Testifies; or
b. Is unavailable as a witness... .
... .
(c) The court shall make specific findings of fact, on the record, as to the basis for its ruling under this subsection.
In admitting the out-of-court statements of the child, the trial court's findings lacked sufficient detail to relieve the trial court of its obligation to address indicia of unreliability as well as indicia of reliability. Davis v. State, 569 So.2d 1317 (Fla. 1st DCA 1990). The trial court, for example, did not address the passage of time between the out-of-court statements and the alleged offense.
We reverse and remand for a new trial.
REVERSED and REMANDED.
ZEHMER and KAHN, JJ., concur.