689 So.2d 354 (1997)
Richard SECCIA, Appellant,
v.
STATE of Florida, Appellee.
No. 96-904.
District Court of Appeal of Florida, First District.
February 18, 1997.
Rehearing Denied March 26, 1997.
Nancy A. Daniels, Public Defender; Paula S. Saunders, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Stephen R. White, Assistant Attorney General, Tallahassee, for Appellee.
WEBSTER, Judge.
In this direct criminal appeal, appellant seeks review of his convictions for sexual battery upon a child younger than age 12 and two counts of a lewd, lascivious or indecent act upon a child. Because the evidence established the commission of only one lewd act, the trial court should have granted appellant's motion for a judgment of acquittal as to the second count. Accordingly, we reverse the second conviction for a lewd act, and remand with directions that the trial court enter a judgment of acquittal. Because the trial court abused its discretion when it found that the alleged child victim was competent to testify without first conducting an adequate competency examination, we also reverse the remaining convictions, and remand them for a new trial.
All of the charges involved the same alleged victim. He was six years old at the time of trial. Prior to his testimony, appellant's counsel questioned his competence to testify, and requested the trial court to make a determination regarding competence. The record then reflects the following:
BY THE COURT:
Q .... How are you doing?
A Fine.

*355 Q .... Tell me what your name is.
A [Child states name.]
. . . .
Q .... How old are you ...?
A Six.
Q Do you go to school now?
A (Nodding head)
Q Do you know the name of the school where you go?
A Yes.
Q What is the name of it?
A (No response)
Q Are you in first grade?
A No. I'm in kindergarten.
Q Kindergarten?
A Yes.
Q Do you know what day your birthday is?
A No.
Q But you are six now?
A (Indicating affirmative)
Q Where do you live?
A At the trailer park.
Q Where is the trailer park? Do you know what the address of it is?
A (Indicating negative)
Q Who do you live with there?
A My mom and my dad and my sister.
Q Your mother, dad and sister?
A Yes.
Q What is your sister's name?
A [Child state's sister's name]
Q Do you go to church anywhere at all?
A Yes.
Q Do you know what it means to tell to have to tell the truth?
A Yes.
Q Do you know you are supposed to tell the truth all the time?
A Yes.
Q Yes?
A Yeah.
Q Do you know what it means to lie and not tell the truth?
A Yes.
Q Let me ask you if you don't tell the truth what might happen to you? Do you know?
A No.
Q Do you think you would be in a lot of trouble if you don't tell the truth?
A Yes.
Q Do you remember last Christmas? [The questions were being asked on February 12.]
A No.
Q You don't remember last Christmas what you got for Christmas?
A No.
. . . .
Q Do you remember coming down here last Friday to the courthouse and talking to these folks here?
A Yeah.
Q .... When you talked to them, did you tell them the truth about everything?
A Yes.
Q .... Do you know where you go to church?
A No.
Q Did you go last week to church? Or do you go to church very often?
A Very often.
Q .... Did you go to church last week?
A No.
BY [DEFENSE COUNSEL]:
. . . .
Q Do you rememberyou said you don't know when your birthday is, right?
A No.
Q Do you remember how old you were when you had your last birthday?
A Yes.
Q How old did you turn?
A Six.
Q Six?
A Yes.
Q .... Did you have a party for your birthday?
A Yes.
Q What did you do for your birthday?
A We went to Chuck E Cheese's.

*356 Q Chuck E Cheese's?
A Yeah.
Q .... Do you do that every year or just last year?
A Last year.
Q .... Do you remember anything that you got for Christmas?
A No.
Q This last year?
A No.
Q You didn't get anything at all?
A (No response)
THE COURT: I asked him already, but go ahead.
A Yes.
BY [DEFENSE COUNSEL]:
Q You said you did get something?
A Yes.
Q You don't remember what?
A No.
Q ... [D]o you know why it's important for you to tell the truth today?
A No.
Q You don't?
A (Indicating affirmative)
. . . .
Q Let me ask you again ...; Do you know why it's important to tell the truth today?
A No.
. . . .
BY THE COURT:
Q .... You do know, though, that when you are down here that you have to tell us the truth, right? Do you understand that?
A Yes.
Q And do you also understand that if you don't tell the truth you will get in lots and lots of trouble, right?
A Yes.
Q .... And when you talk to us today you are going to tell the truth; Is that right?
A Yes.
Appellant's counsel then objected to the child testifying, arguing that the examination of the child had failed to demonstrate that he was competent. The trial court overruled the objection, and the child was permitted to testify.
In Griffin v. State, 526 So.2d 752 (Fla. 1st DCA 1988), this court said:
[W]hen a child's competency is at issue, the trial court should consider (1) whether the child is capable of observing and recollecting facts, (2) whether the child is capable of narrating those facts to the court or to a jury, and (3) whether the child has a moral sense of the obligation to tell the truth.
Id. at 753 (citing Lloyd v. State, 524 So.2d 396 (Fla.1988)). Concluding that the examination of the child conducted in the trial court had been insufficient to establish "whether the child was capable of observing, recollecting, and narrating facts, and whether the child had a moral sense of the duty to tell the truth" (id. at 755), we reversed and remanded for a new trial.
In Wade v. State, 586 So.2d 1200 (Fla. 1st DCA 1991), we again reversed and remanded for a new trial because the trial court's examination of the alleged child victim had been insufficient to establish that the child had either the ability to observe and recollect facts or a moral sense of the obligation to tell the truth. We noted that, although the questions asked had "suggest[ed] the child knew what a lie is and that it is bad," that was insufficient because "knowing the difference between the truth and a lie does not impute a moral obligation or sense of duty to be truthful." Id. at 1204. The recent decisions in Z.P. v. State, 651 So.2d 213 (Fla. 2d DCA 1995); Hammond v. State, 660 So.2d 1152 (Fla. 2d DCA 1995); and Fuller v. State, 669 So.2d 273 (Fla. 2d DCA), review denied, 675 So.2d 929 (Fla.1996); are to the same effect.
We are unable to distinguish in any substantive way the questions posed to the child-witnesses in the foregoing cases from those posed in this case. Accordingly, we conclude that the trial court committed error when it permitted the child to testify. The state argues that, if error occurred, it was harmless. We are unable to accept this argument because, without the child's testimony, the corpus delicti of the offenses would *357 not have been established. Accordingly, appellant is entitled to a new trial.
The evidence, viewed in a light most favorable to the state, established only one lewd, lascivious or indecent act. Therefore, it was error to deny appellant's motion for a judgment of acquittal as to the second lewd-act count. Accordingly, we reverse the second lewd-act conviction, and remand with directions that the trial court enter a judgment of acquittal as to that charge.
REVERSED and REMANDED, with directions.
ALLEN, J., concurs.
LAWRENCE, J., dissents with written opinion.
LAWRENCE, Judge, dissenting.
The "moral sense" requirement announced by the majority in this case is a requirement beyond our precedent. The majority relies on Griffin v. State, 526 So.2d 752 (Fla. 1st DCA 1988). We said there:
In summary, in determining the competency of a child of tender years to testify as a witness, the trial court must focus on two elements: (1) the child's intelligence, and (2) the child's understanding of the obligation to tell the truth. Before finding the child competent to testify as a witness, the trial court should determine that the child is capable of observing and recollecting facts, is capable of narrating those facts, and appreciates the need to tell the truth. § 90.605(2), Fla. Stat. (1985); Lloyd v. State, 524 So.2d at 400.
Id. at 758 (emphasis added). We thus heretofore merely required, for a child witness to be competent to testify, that a child witness meet the statutory requirement of truth-tellingthat the child understand that the truth must be told. Our reference in Griffin to a child's "moral sense" of the obligation to tell the truth merely is a restatement of the statutory requirement that a child "understands the duty to tell the truth or the duty not to lie." Id. at 753 n. 1, citing § 90.605(2), Fla. Stat. (1985). Nothing in Griffin holds or suggests that we adopted a truth-telling requirement beyond the statute's requirement. This conclusion is buttressed by our reliance upon Lloyd v. State, 524 So.2d 396 (Fla.1988) (holding that the trial judge properly exercised his discretion in permitting a child witness to testify). The Florida Supreme Court imposed no superstatutory "moral sense" requirement in Lloyd; the court, on the contrary, observed that "[the child witness] understood his duty to tell the truth." Lloyd, 524 So.2d 396 at 400. The majority also relies on Wade v. State, 586 So.2d 1200 (Fla. 1st DCA 1991), a case that turned upon a child who "was not unequivocally capable of separating fact from fantasy." Id. at 1204. Our statement that "knowing the difference between the truth and a lie does not impute a moral obligation or sense of duty to be truthful," id., while certainly true, falls short of a requirement to understand the moral underpinnings of truth-telling, as well it should; we do not require this of adults who testify.
Section 90.605(2) contains no requirement that a child understand why there is a duty to tell the truth; the statute merely requires that the child understand that there is a duty to tell the truth. The statute imposes no "moral sense" requirement upon child witnesses. Once a child demonstrates an appreciation of the difference between a false statement and a true one, the child's assertion that he will tell the truth, that he understands that it is important to tell the truth (even if he does not understand the moral underpinnings of truth-telling) sufficesthe statute is satisfied.
The majority also relies on opinions from our sister court like Fuller v. State, 669 So.2d 273 (Fla. 2d DCA 1996) (holding that the trial court abused its discretion in finding a child competent to testify where the child's statements regarding truth-telling were conclusory, and where the court's examination of the child's ability to observe and recollect facts was incomplete). Fuller however contains no mandate for a superstatutory "moral sense" requirement; it merely eschews conclusory responses. The entire opinion on the truth-telling point is as follows:
In this case, the voir dire examination failed to establish that C.W. had the "moral sense of the obligation to tell the truth." There were no questions asked of C.W. to *358 elicit this information. Although C.W. stated that he understood the importance of telling the truth, his answer was conclusory. C.W. then stated that he was having trouble paying attention. C.W. said that when this happens, he begins to "guess," and that might happen during his trial testimony.
Id. at 274. The child witness in the instant case, needless to say, said nothing about guessing; he rather repeatedly stated that he understood that he must tell the truth. The instant record furthermore is devoid of any suggestion that the child witness had trouble paying attention, or was anything but competent regarding the narration of facts. The child's narration of the sexual assault upon him is lucid, consistent, and convincing, even on the cold record.
I would find that the trial judge properly exercised his discretion in finding the child witness competent to testify. Any imposition of a "moral sense" requirement for child competency should be left, in my view, to the legislature.