734 So.2d 1116 (1999)
Nelson DELACRUZ, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 97-4507.
District Court of Appeal of Florida, First District.
May 10, 1999.
Rehearing Denied June 4, 1999.
*1117 Nancy A. Daniels, Public Defender; Jamie Spivey, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; James W. Rogers and Carolyn J. Mosley, Assistant Attorneys General, Tallahassee, for Appellee.
*1118 WEBSTER, J.
In this direct criminal appeal, appellant challenges his conviction, following a jury trial, for a lewd, lascivious or indecent act upon a child. He argues that the trial court erroneously (1) found that the alleged child victim was competent to testify; and (2) held that, if the child was not competent to testify, there was sufficient corroborating evidence to allow into evidence the child's out-of-court statements. We reverse.

I.

Child Victim's Competence to Testify
Following the start of the trial, the court held a hearing out of the jury's presence to determine whether the alleged child victim was competent to testify. After listening to the child, the trial court held, over objection, that she was competent. Appellant's counsel argued that the child's testimony had been insufficient to establish that the child knew the difference between the truth and a lie, or that she understood the importance of telling the truth. Counsel again makes that argument on appeal.
The child was four years old at trial. Notwithstanding repeated leading questions by the prosecutor, the child's testimony was equivocal, at best. At one point, the following occurred:
THE COURT:.... Do you know what it means to tell the truth?
THE WITNESS: (Nods head affirmatively.)
THE COURT: Do you?
THE WITNESS: (Shakes head negatively.)
THE COURT: You don't know what it means to tell the truth? Do you know what it means to tell a lie?
THE WITNESS: (Shakes head negatively.)
THE COURT: You don't?
THE WITNESS: (Shakes head negatively.)
THE COURT: If I ask you something, if I ask you a question, will you tell me really what happened?
THE WITNESS: (Nods head affirmatively.)
THE COURT: Will you?
THE WITNESS: (Nods head affirmatively.)
THE COURT: You won't make up anything, will you?
THE WITNESS: Huh?
THE COURT: You'll tell me exactly what happened?
THE WITNESS: (Nods head affirmatively.)
THE COURT: Is that the truth?
THE WITNESS: (Nods head affirmatively.)
THE COURT: Is that telling the truth?
THE WITNESS: (Nods head affirmatively.)
THE COURT: So you know what it means to make up something and to tell the truth. Do you know the difference between those two things?
THE WITNESS: (Shakes head negatively.)
THE COURT: You don't?
THE WITNESS: (Shakes head negatively.)
At another point, the following occurred:
THE COURT: You wouldn't make up anything, would you?
THE WITNESS: (Shakes head negatively.)
THE COURT: Suppose you made something up and didn't tell ... really what happened
THE WITNESS: (Nods head affirmatively.)
THE COURT:what might happen to you?
THE WITNESS: (Shrugs shoulders.)
THE COURT: You don't know?
THE WITNESS: (Shakes head negatively.)

*1119 THE COURT: Would you get in trouble?
THE WITNESS: Maybe.
At yet another point, in response to questions from the prosecutor, the following occurred:
[PROSECUTOR]: ... I'm going to ask you questions about what happened....
THE WITNESS: (Nods head affirmatively.)
[PROSECUTOR]: Are you going to tell me what happened?
THE WITNESS: (Nods head affirmatively.)
[PROSECUTOR]: Okay. Do you know what it means to make up something that isn't true?
THE WITNESS: (Shakes head negatively.)
Having carefully reviewed the child's testimony during the hearing, we conclude that it might best be described as uncommunicative. Of some 78 questions posed to her, she responded verbally to only 17. Her responses to the remaining questions consisted of either head-shaking or shrugs. We are able to find nothing in the child's testimony that establishes that she understood what it meant to tell the truth; the difference between telling the truth and telling a lie; or what would happen if she did not tell the truth. We are similarly unable to find in the child's testimony anything from which one might conclude that she was capable of observing and recollecting facts, or of narrating those facts to a jury. In short, the child's testimony was insufficient to establish that she was competent to testify, and the trial court abused its discretion when it found to the contrary. See, e.g., Seccia v. State, 689 So.2d 354 (Fla. 1st DCA 1997); Wade v. State, 586 So.2d 1200 (Fla. 1st DCA 1991); Griffin v. State, 526 So.2d 752 (Fla. 1st DCA 1988). The state asserts that, to the extent it was error to find that the child was competent to testify, that error was harmless because the child's trial testimony was cumulative of her out-of-court statements which were also admitted at trial. We do not address this harmless error argument because, for the reasons that follow, we conclude that the trial court committed reversible error when it held that one of those out-of-court statements qualified as other corroborative evidence of the offense sufficient to support the admissibility of the out-of-court statements.

II.

Section 90.803(23)(a)2b Corroborative Evidence Requirement
Section 90.803(23) of the Florida Evidence Code addresses the circumstances in which otherwise inadmissible out-of-court statements made by an alleged child victim may be admitted in evidence at trial. To the extent pertinent, that rule permits such statements to be used as substantive evidence at trial provided that the trial court finds that the statements are reliable and either the child testifies at trial or the court finds, further, that "there is other corroborative evidence of the abuse or offense."
At trial, the state presented five witnesses who testified regarding statements made to them by the child regarding the offense. When the trial court inquired about the existence of corroborative evidence, the prosecutor correctly responded that corroboration was not required pursuant to section 90.803(23) because the child had testified. Apparently concerned that its finding regarding competence might be reversed on appeal, the trial court held, over objection, that the child's out-of-court statements had been sufficiently corroborated for purposes of section 90.803(23)(a)2b by two pieces of evidencean out-of-court statement made by the child to the effect that her vaginal area hurt when her grandmother tried to wash her; and a statement made by appellant at the time of his arrest admitting that he could have accidentally touched the child's vagina "a lot of times" while playing *1120 with her. Appellant argues that neither piece of evidence could be considered for purposes of corroboration. He argues, further, that, if we conclude that the trial court erroneously found the child competent to testify at trial, we must reverse appellant's conviction because the out-of-court statements were not corroborated and, therefore, not admissible. The state asserts that, because the out-of-court statements were sufficiently corroborated, any error regarding the competency finding would be harmless in light of the other evidencei.e., the out-of-court statements and we should affirm.
Appellant first argues that a plain reading of section 90.803(23)(a)2b establishes that the evidence offered as corroborative may not consist of one or more of the child victim's out-of-court statements because it speaks in terms of "other corroborative evidence of the abuse or offense." According to appellant, the use of the word "other" is clearly intended to refer to evidence "other" than the out-of-court statements of the child victim. Although not previously directly addressed in Florida, there does appear to be support for appellant's position in dicta. Thus, in State v. Townsend, 635 So.2d 949, 957 (Fla.1994), the court said that "the other corroborating evidence requirement [in section 90.803(23)(a)2b] assures that a defendant will not be convicted solely on the basis of the hearsay testimony." It would seem that permitting one or more of the alleged child-victim's out-of-court statements to be used to satisfy the corroboration requirement of section 90.803(23)(a)2b would permit a defendant to "be convicted solely on the basis of the hearsay testimony." Moreover, in Jones v. State, 728 So.2d 788, 24 Fla. L. Weekly D569 (Fla. 1st DCA Feb.24, 1999), we held that similar fact evidence could be used to satisfy the "other corroborative evidence" requirement in section 90.803(23)(a)2b. In doing so, we discussed the meaning of the phrase "other corroborative evidence":
Corroborative, or corroborating, evidence has been defined as "[e]vidence supplementary to that already given and tending to strengthen or confirm it. Additional evidence of a different character to the same point." Black's Law Dictionary 344 (6th ed.1990). The two leading legal encyclopedias are to the same effect. 32A C.J.S. Evidence § 1302 (1996); 81 Am.Jur.2d Witnesses §§ 1001, 1002 (1992). We can think of no good reason to ascribe to the phrase as used in section 90.803(23)(a)2b a meaning different from that generally recognized in legal circles. Accordingly, it would appear that the phrase "other corroborative evidence of the abuse or offense" means evidence other than the alleged child victim's out-of-court statements which tends to confirm that the charged offense occurred.
Id. at D570, 728 So.2d at 791.
The courts in Washington and Colorado have addressed whether a child victim's out-of-court statements can serve as corroborative evidence for purposes of evidence code provisions substantively similar to section 90.803(23)(a)2b. In State v. Swan, 114 Wash.2d 613, 790 P.2d 610 (1990), the Washington Supreme Court said that an alleged child victim's complaints to her father "that her bottom was very sore while doubling over and putting her hands on her crotch" "provide[d] some degree of corroboration of sexual abuse." Id. at 622-23. However, there was considerable other corroborative evidence, and the court was not directly presented with the issue of whether a child victim's out-of-court statements qualified as corroborative evidence for purposes of the evidence code. Subsequently, in State v. Bishop, 63 Wash. App. 15, 816 P.2d 738 (1991), the Washington Court of Appeals held that an out-of-court statement made by an alleged child victim to an examining physician that urination was painful was independently admissible as an exception to the hearsay rule and, therefore, could be used to corroborate the child's out-of-court statements of sexual abuse. In People v. Bowers, 801 P.2d 511 (Colo.1990), the Colorado *1121 Supreme Court rejected an argument that the alleged child victim's use of anatomically correct dolls and her gesturing in describing sexual acts during interviews by a detective and a counselor could be used to corroborate the child's out-of-court statements of sexual abuse. It said:
We are convinced that the term "corroborative evidence" in section 13-25-129(1)(b)(II) was intended to mean what the term clearly denotesthat is, evidence, direct or circumstantial, that is independent of and supplementary to the child's hearsay statement and that tends to confirm that the act described in the child's statement actually occurred. By way of example, and not by limitation, corroborative evidence may include any of the following: testimony from an eyewitness, other than the unavailable child-victim, whose statement is offered into evidence, that the offense occurred; statements of other children who were present when the act was committed against the victim; medical or scientific evidence indicating that the child was sexually assaulted; expert opinion evidence that the child-victim experienced post-traumatic stress consistent with the perpetration of the offense described by the child; evidence of other similar offenses committed by the defendant; the defendant's confession to the crime; or other independent evidence, including competent and relevant expert opinion testimony, tending to establish the commission of the act described in the child's statement.
The consequences of adopting the alternative construction proposed by the People are obvious. Construing subsection 13-25-129(1)(b)(II) so as to permit a child's verbal or nonverbal assertions made during the course of a statement to be used as corroborative evidence of the act described in the statement would render the child's statement self-corroborating and would thereby deprive the term "corroborative evidence" of any meaningful content. In effect, the proponent of the child's statement would be permitted to bootstrap on the assertive content of the statement in order to "corroborate" the act which is the subject of the child's statement. If the General Assembly had intended such a construction, it would have sanctioned the admissibility of the child's statement solely on the basis of the trial court's determination that the "time, content and circumstances of the statement provide sufficient guarantees of reliability," without regard to the existence of corroborative evidence.
. . . .
In light of our determination that the statute does not contemplate the use of the assertive content of the child's statement, whether in the form of a verbal or nonverbal assertion, as corroborative evidence of the act described in the child's statement, we also are convinced that subsection 13-25-129(1)(b)(II) was not intended to sanction the use of one of the child's hearsay statements as corroborative evidence of the act described in another hearsay statement by the same child. Such reciprocal use of hearsay as corroborative evidence would be but another form of evidentiary bootstrapping.
Id. at 525-27 (footnote omitted).
We find more persuasive the Colorado Supreme Court's treatment of the issue. It seems to us that, had the legislature intended to permit the use of one or more out-of-court statements by the alleged child victim to corroborate either themselves or other out-of-court statements by the child, there would have been no need to include any requirement regarding corroboration, and certainly no reason to require "other corroborative evidence." (Emphasis added.) Had such been its intent, the legislature would have omitted any requirement regarding corroboration, providing instead that only reliability need be established in order for such statements to be admissible. Moreover, to read section 90.803(23)(a)2b as the state urges would permit those charged *1122 with crimes against children to be convicted based solely upon hearsay evidence. Accordingly, we hold that out-of-court statements of the alleged child victim may not be used to satisfy the "other corroborative evidence" requirement of section 90.803(23)(a)2b.
We address next whether the statement made by appellant when he was arrested, admitting that he could have accidentally touched the child's vagina "a lot of times" while playing with her, may constitute "other corroborative evidence" for purposes of section 90.803(23)(a)2b. Appellant argues that it may not "because 1) it is hearsay evidence, not subject to an exception, 2) it is exculpatory ..., and 3) the evidence was not even offered as part of the state's case."
Appellant is correct that the statement made at the time of his arrest is hearsay. However, he is incorrect when he says that the statement does not fit within any exception to the hearsay rule. The statement is clearly admissible as an admission by a party-opponent, pursuant to section 90.803(18) of the Florida Evidence Code. As Professor Ehrhardt explains:
Admissions by a party-opponent have historically been admissible as substantive evidence. These out-of-court statements and actions are admissible, not because they were against the interests of the party when they were made, but because they are statements made by an adversary and because the adverse party cannot complain about not cross-examining himself or herself. There is no requirement under section 90.803(18), or in the reported decisions that the admissions be against a party's interest. The common name of the exception, e.g., admission, may be misleading since there is no requirement that the adversary admit anything in the statement. A more precise term for the exception is "statement by a party-opponent." An exculpatory statement of a party is admissible against the party making the statement under section 90.803(18).
Charles W. Ehrhardt, Florida Evidence § 803.18, at 733-34 (1999 ed.) (footnotes omitted). Accord State v. Elkin, 595 So.2d 119 (Fla. 3d DCA 1992). Thus, appellant's statement is admissible regardless of whether it may be deemed exculpatory.
Whether the statement is, in fact, exculpatory does not appear to us to be nearly as self-evident as appellant suggests. A trier of fact might well conclude that appellant's explanation at the time of his arrest that the touchings were accidental was so inherently implausible in light of the other circumstances that it evidences a consciousness of guilt. For purposes of section 90.803(23)(a)2b, the trial court is the fact-finder.
There is nothing in section 90.803(23)(a)2b that requires the state to present the "other corroborative evidence of the abuse or offense" at trial. The plain language of the section requires only that the trial court find that "there is other corroborative evidence of the abuse or offense." Normally, one would expect this to occur as the result of a hearing held either before the trial or during the trial, but out of the jury's presence.
We hold that appellant's statement made at the time of his arrest may qualify as "other corroborative evidence of the abuse or offense" for purposes of section 90.803(23)(a)2b. However, the trial court expressly relied upon both the child's out-of-court statement that her vaginal area hurt and appellant's statement. We have held here that reliance on the child's out-of-court statement was error. Because we cannot determine from the record whether the trial court would have found sufficient corroboration in appellant's statement, alone, to satisfy the requirement of section 90.803(23)(a)2b, we do not address whether, given the facts of this case, such a finding would be within the trial court's discretion.
Appellant's conviction is reversed, and the case is remanded for a new trial.
*1123 REVERSED and REMANDED, with directions.
ALLEN and BROWNING, JJ., CONCUR.