17 So.3d 312 (2009)
J.B.J., A Child, Appellant,
v.
STATE of Florida, Appellee.
No. 1D08-5476.
District Court of Appeal of Florida, First District.
June 9, 2009.
*313 Nancy A. Daniels, Public Defender, Steven L. Seliger, Assistant Public Defender, and Richard Summa, Assistant Public Defender, Tallahassee, for Appellant.
Bill McCollum, Attorney General, and Charlie McCoy, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Appellant, J.B.J., appeals an order of adjudication of delinquency for the offense of sexual battery by a person under the age of eighteen on a victim under the age of twelve. Appellant argues that the trial court abused its discretion in finding the four-year-old victim competent to testify and in allowing the investigating officer to give hearsay testimony. We agree. Accordingly, we reverse and remand for a new trial.
Prior to trial, the court and Appellant's counsel questioned the victim to determine whether she was competent to testify:

*314 BY THE COURT:
Q: .... You know the difference between telling the truth and telling a lie, don't you?
A: Unh-unh (negative).
Q: You don't?
A: Unh-unh (negative).
Q: Do you know what it means to say what is true and what is not true?
....
A: No.
....
Q: If I were to say the robe I'm wearing is white, would that be true, or would that be a lie?
A: A lie.
Q: ... [W]hat color is my robe?
A: Black.
Q: And does that help you understand the difference between telling the truth and telling a lie?
A: Yes.
BY [DEFENSE COUNSEL]:
Q: ... [C]an you tell me what it means to tell the truth?
A: Yes. If you tell the truth, youand if you don't tell the truth, you go to bed.... I don't know what to say....
COURT: Okay. If you don't tell the truth, you go to bed is what you said. And if you do tell the truth, you get to stay up.
A: [Appellant] had pulled his pee-pee out.... And he made me suck his pee-pee.
BY [DEFENSE COUNSEL]:
Q: ... do you remember coming in and talking to me about four weeks ago?
A: No.
Q: Do you remember when you were sitting on a big couch?
A: Yes.
Q: And I asked you some questions; do you remember that?
A: Yes.
Q: Okay. And have you watched a movie with you talking to a lady in it?
A: No.
Q: Did you ever watch that movie with Ms. Beth over here?
A: No.
Q: Before you came into this room today, did you talk to Ms. Beth? This (indicating) is Ms. Beth.
A: Yes.
Q: And did you talk to Ms. Beth about truth and lie?
A: Yes.
Q: And did you talk to Ms. Beth about what you were going to say?
A: Yes.
Q: .... [I]sn't it true that you once watched a movie with Ms. Beth where you were talking to a lady about [Appellant]?
A: Yes.
Q: Okay. Did you see that movie today?
A: No.
Q: Okay. Now isn't it true then ... that to tell the truth means that you get a surprise?
A: Yes.
Q: And all that happens when you don't tell the truth is you don't get a surprise?
A: Yes.
Q: ... [Y]ou have never gotten into trouble for not telling the truth, have you?
A: No.
Q: [W]hat day is your birthday?
A: I don't know.

*315 Q: And where do you live?
A: Huh? No.
Q: Okay. You don't know where you live ...?
A: Yes, I do.
Q: Do you know the address of where you live?
A: No.
....
BY [COUNSEL FOR THE STATE]:
Q: ... [Y]ou told [defense counsel] that when you lie, or when you tell the truth, you get surprises, right?
A: Yes.
Q: What is surprises?
A: Surprises are when you get candy and something else. I don't know what else.
Q: Is getting surprises a good thing?
A: Yes.
Q: Okay. Is not getting surprises a bad thing?
A: No.
Q: Now, when you talked about telling the truth and telling a lie, is telling a lie a bad thing?
A: Yes.
Q: Okay. And what happens when you do bad things?
A: You go to bed.
Q: You go to bed?
A: Yes.
Q: Do you like going to bed?
A: No.
Q: Why don't you like going to bed?
A: Because in the morning time, you got to wake up. I don't like going to bed at morning.
Q: Now, is going to bed a good thing or bad thing?
A: A bad thing.
Q: When your mom tells you or your dad tells you to go to bed, is it because you've been good?
A: Yes.
Q: You go to bed when you have been good?
A: Yes.
Q: When they tell you to go to bed have they ever told you to go to bed as a punishment?
A: No.
Q: No, they never told you to go to bed as a punishment?
A: No.
Q: What do they do when they punish you?
A: Put me in the room.
Q: Okay. Is that a bad thing, to be put in the room?
A: Yes.
Q: Okay. Now, when the judge talked to you, he asked if you would tell us the truth today; would you do that?
A: Yes.
Q: Okay. Now if you don't tell us the truth today, would you be doing something bad?
A: Yes.
Q: Okay. So you want to tell us the truth today; is that right?
A: Yes.
....
BY [DEFENSE COUNSEL]:
Q: Did you get presents last Christmas?
A: Yes.
Q: Do you remember one thing you got for Christmas last year?
A: A microphone, a toy microphone.
Q: .... [D]o you live with other people?
A: Yes.
Q: Who lives in your home?

*316 A: Mama, daddy, and my two brothers.
Q: What are your brother[s'] name[s]?
A: [Brothers' names].
Q: And they live in the home with you?
A: [Brother], he lives in his own home.
Q: So, he lives some place else?
A: He lives in Palatka.
Appellant argued that the examination had not shown that the victim understood the obligation to tell the truth, and thus, she was incompetent to testify. The trial court overruled the objection and allowed the victim to testify.
At trial, the victim testified that Appellant made her "suck his wee-wee" in the "clubhouse" in a common area of their apartment complex. The only other witness to testify to this act was the victim's six-year-old brother, J.E.A., and the reliability of his testimony was compromised in several ways. J.E.A. testified that he and another child, M.B., witnessed the crime together and told his and the victim's mother ("the Mother") about it the same day. On cross examination, Appellant's counsel questioned J.E.A. as follows:
BY [DEFENSE COUNSEL]:
Q: [Y]ou did tell your mom that [the victim] kissed [Appellant's] pee-pee?
A: Yes.
Q: And isn't it true that you had heard about girls touching boys' wieners before that?
A: Yes.
....
Q: Isn't it true that it was [M.B.] that had told you about that?
A: Yes.
Q: And isn't it true that it was [M.B.] that told you about [the victim] sucking [Appellant's] wiener?
A: Yes.
In contrast to J.E.A.'s account of events, twelve-year-old M.B. testified that J.E.A. was not present when he observed Appellant in the clubhouse with the victim or when he told the Mother. M.B. further testified that he did not tell the Mother about the incident until the day after it occurred. M.B. testified that he did not actually see Appellant molest the victim because Appellant was standing in front of her, blocking his view. M.B. further testified that he saw Appellant leave the clubhouse with his penis exposed.
The Mother testified that M.B. informed her that Appellant may have molested the victim the day after it was alleged to have occurred and that M.B. was alone at the time. She further testified that she called the police after speaking to M.B. A sex abuse counselor who interviewed the Mother testified that the Mother told her that when she questioned J.E.A., he denied witnessing the incident.
The investigating officer testified that he spoke to J.E.A. regarding the incident between Appellant and the victim. The State asked the officer what J.E.A. had told him, and Appellant's counsel objected on the grounds that it was a prior consistent statement and hearsay. The State responded that it was admissible under section 90.801(2)(b), Florida Statutes, as a prior consistent statement to rebut Appellant's counsel's suggestion on cross-examination that J.E.A. had fabricated his testimony based on M.B.'s improper influence. Appellant's counsel argued that the statement did not qualify as a prior consistent statement because it was made subsequent to when such influence was alleged to have occurred. The trial court allowed the testimony. The officer testified that J.E.A. told him he observed the victim performing oral sex on Appellant and that Appellant "stated to [J.E.A.] that if he told anybody, he would no longer let [J.E.A.] play with [Appellant's] toys." Appellant's *317 counsel objected to the "toy part" of the officer's testimony, arguing that it was not related to any prior consistent statement made by J.E.A. The trial court overruled the objection. At the close of trial, the court found Appellant delinquent for the offense of sexual battery by a person under the age of eighteen on a victim under the age of twelve.
We will first address the child competency issue. In Griffin v. State, 526 So.2d 752, 753 (Fla. 1st DCA 1988), this court stated, "[W]hen a child's competency is at issue, the trial court should consider (1) whether the child is capable of observing and recollecting facts, (2) whether the child is capable of narrating those facts to a court or to a jury, and (3) whether the child has a moral sense of the obligation to tell the truth." In the instant case, the trial court found that the victim met each of these criteria. Appellant challenges only the finding that the victim had a moral sense of the obligation to tell the truth.
In Wade v. State, 586 So.2d 1200 (Fla. 1st DCA 1991), we reversed and remanded for a new trial because the trial court's examination of the child victim did not demonstrate that she had a moral sense of the obligation to tell the truth or the ability to recollect relevant facts. During the competency colloquy, the six-year-old child in Wade stated that she knew the difference between the truth and a lie and said that it would be a lie to call her black shirt red. Id. at 1201-03. The child further indicated that she would "get in a lot of trouble" if she told a lie, that telling the truth was good, and that she would tell the truth "today." Id. On appeal, this court determined that, although the questions "suggest[ed] the child knew what a lie is and that it is bad," such was insufficient because "knowing the difference between the truth and a lie does not impute a moral obligation or sense of duty to be truthful." Id. at 1204. Similarly, in Seccia v. State, 689 So.2d 354, 354 (Fla. 1st DCA 1997), the six-year-old victim's responses to competency questions indicated he did not know what would happen if he did not tell the truth, though he later admitted he thought he would get in trouble if he did not tell the truth. We concluded in Seccia that the trial court abused its discretion in finding the child victim competent to testify. Id. at 356; see also Fuller v. State, 669 So.2d 273 (Fla. 2d DCA 1996) (holding that responses to questions concerning understanding of the importance of telling the truth must reflect a moral sense of obligation to tell the truth and that mere conclusory answers to leading questions do not satisfy this standard).
The questions posed during the competency colloquies in Wade and Seccia are not materially distinguishable from those posed to the victim in the instant case. Accordingly, in light of Wade and Seccia, we find the victim's responses to the questions posed here insufficient to demonstrate that she felt a moral obligation to tell the truth. She failed to provide a definite answer as to whether she would be punished for lying and was unable to explain in her own words the difference between the truth and a lie. Therefore, the trial court erred in permitting the child victim to testify.
The state argues that if any error occurred in allowing the victim to testify, it was harmless. An error is harmless "if the reviewing court can say beyond a reasonable doubt that `the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.'" J.G. v. State, 883 So.2d 915, 925 (Fla. 1st DCA 2004) (quoting State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986)). Applying this standard, *318 we are unable to conclude that the erroneous admission of the victim's testimony was harmless. The victim and J.E.A. were the only witnesses who testified to the corpus delicti of the charged offense, and J.E.A.'s testimony was inconsistent with that of the Mother and M.B. While the trial court could have accepted J.E.A.'s testimony despite these inconsistencies, we cannot conclude beyond a reasonable doubt that its decision was uninfluenced by the erroneous admission of the child victim's testimony. Thus, the error was reversible.
Next, we consider Appellant's challenge to the officer's testimony. Appellant argues on appeal that the officer's testimony regarding J.E.A.'s prior consistent statement, that "[J.E.A.] observed the victim... performing oral sex on the suspect," failed to meet the requirements of section 90.801(2)(b), Florida Statutes (2008). Appellant also argues that the second part of the officer's hearsay statement, that Appellant told J.E.A. he would not be able to play with his toys if he told anyone what happened, was hearsay within hearsay, not subject to any exception. We agree with both contentions.
Prior consistent statements are generally inadmissible to corroborate or bolster a witness's trial testimony because such statements are usually hearsay. See Taylor v. State, 855 So.2d 1, 22-23 (Fla. 2003); Chandler v. State, 702 So.2d 186, 197 (Fla.1997); McElveen v. State, 415 So.2d 746, 748 (Fla. 1st DCA 1982). Section 90.801(2), Florida Statutes (2008), provides an exception to this general rule where "the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and that statement is: .... (b) Consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of improper influence, motive, or recent fabrication." Additionally, to be admissible under section 90.801(2)(b), the prior consistent statement must have been made "before the existence of a fact said to indicate bias, interest, corruption, or other motive to falsify." Taylor, 855 So.2d at 23; see also Keffer v. State, 687 So.2d 256, 258 (Fla. 2d DCA 1996) (citations omitted); McElveen, 415 So.2d at 748. In Jenkins v. State, 547 So.2d 1017, 1020 (Fla. 1st DCA 1989), this court explained that in order to introduce a prior consistent statement, "[t]here must be an initial attempt on cross-examination to demonstrate the improper influence, motive or recent fabrication and, once such an attempt has successfully occurred, then prior consistent statements are admissible on the redirect examination or through subsequent witnesses to show the consistency of the witness'[s] trial testimony." A prior consistent statement is not admissible under section 90.801(2)(b) "merely because the opposing lawyer has attacked the credibility of the witness or challenged the truthfulness of the statement given by the witness at trial." See Monday v. State, 792 So.2d 1278, 1280 (Fla. 1st DCA 2001) (citing Jenkins, 547 So.2d at 1020-21).
In the instant case, the first condition for admitting prior consistent statements under section 90.801(2) was met because J.E.A. testified at trial and Appellant was given the opportunity to cross-examine J.E.A. regarding his prior statement. Thus, this issue turns on whether the officer's testimony was introduced to rebut an express or implied charge against J.E.A. of improper influence or motive to falsify, and, if so, whether J.E.A.'s prior consistent statement was made before the existence of such influence or motive.
Appellant's counsel never directly or implicitly alleged that J.E.A. had any motive to lie or that he had been subjected to any *319 pressure from outside sources to testify in a certain way. Rather, Appellant's counsel elicited testimony from J.E.A. that M.B. told him that the victim performed fellatio on Appellant and suggested that J.E.A. was merely repeating M.B.'s allegations, not that M.B. was influencing J.E.A. to testify against Appellant. This does not constitute an "improper influence" under section 90.801(2)(b). Counsel was simply attacking the credibility of J.E.A.'s testimony that he had personally observed the criminal act.
Moreover, the record does not demonstrate that J.E.A. made the statement to the investigating officer prior to M.B.'s telling him about the sex act between Appellant and the victim. Rather, J.E.A.'s testimony suggests M.B. told him about the incident before J.E.A. told the Mother, who later called the police. Thus, J.E.A.'s account of the crime to the investigating officer was not made prior to M.B.'s alleged influence. We conclude that the trial court erred in admitting the investigating officer's hearsay testimony of J.E.A.'s prior consistent statement under section 90.801(2)(b).
We further conclude that the trial court erred in admitting the investigating officer's hearsay-within-hearsay testimony as to J.E.A.'s account of Appellant's threat not to allow him to play with his toys. Section 90.805, Florida Statutes (2008), provides that "hearsay within hearsay" may be admissible "provided each part of the combined statements conforms with an exception to the hearsay rule." In the instant case, Appellant allegedly threatened J.E.A. by telling him that he would not be able to play with his toys if he told anyone what Appellant had done with the victim. This statement constituted an admission by Appellant to J.E.A., which would have been admissible as a hearsay exception under section 90.803(18)(a), Florida Statutes (2008), if J.E.A. had testified to this threat by Appellant. There is no relevant hearsay exception, however, regarding the second level of hearsay. There were no circumstances existing that would qualify J.E.A.'s words to the investigating officer as an exception to the hearsay rule. Therefore, the trial court's overruling of Appellant's objection to this testimony was error.
The State argues that if the admission of the investigating officer's hearsay testimony was error, it was harmless. To accept this argument, we must find beyond a reasonable doubt that this inadmissible testimony did not affect the trial court's verdict. See J.G., 883 So.2d at 925. At trial, the investigating officer testified that J.E.A. told him the following:
[J.E.A.] observed the victim and the suspect behind the apartment building in which the victim was performing oral sex on the suspect. And the suspect stated to him that if he told anybody, he would no longer play with his toys.
This testimony, taken as a whole, relates directly to the elements of the offense of sexual battery and communicates, essentially, that Appellant admitted to this offense. The investigating officer's hearsay testimony bolsters J.E.A.'s testimony and gives it greater credibility than it would have otherwise had, particularly in light of M.B.'s testimony that J.E.A. was not present at the time of the alleged crime. J.E.A.'s testimony was critical, as he was the only witness who testified to the act of sexual battery other than the victim, who we find was incompetent to testify. As such, we cannot conclude beyond a reasonable doubt that the investigating officer's improper hearsay testimony did not contribute to Appellant's adjudication. Thus, admission of the investigating officer's hearsay testimony was not harmless error.
*320 Based on the errors discussed above, we REVERSE the trial court's delinquency order and REMAND for a new trial.
BENTON, LEWIS, and CLARK, JJ., concur.