970 So.2d 332 (2007)
Shana BARNES, Petitioner,
v.
STATE of Florida, Respondent.
No. SC06-662.
Supreme Court of Florida.
November 29, 2007.
*333 Louis K. Rosenbloum, Pensacola, FL, for Petitioner.
Bill McCollum, Attorney General, Trisha Meggs Pate, Bureau Chief Criminal Appeals, and Thomas D. Winokur, Assistant Attorneys General, Tallahassee, FL, for Respondent.
LEWIS, C.J.
Petitioner Shana Barnes seeks review of the decision of the First District Court of Appeal in Barnes v. State, 922 So.2d 380 (Fla. 1st DCA 2006) (Barnes II), asserting that it expressly and directly conflicts with the decision of this Court in Young v. State, 645 So.2d 965 (Fla.1994), and the decision of the Fifth District Court of Appeal in Janson v. State, 730 So.2d 734 (Fla. *334 5th DCA 1999), review denied, 767 So.2d 457 (Fla.2000), on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

FACTS AND PROCEDURAL HISTORY
On August 7, 2000, Shana Barnes was charged with second-degree murder after she shot her husband with a firearm. A jury convicted Barnes of the crime, but on appeal the First District Court of Appeal reversed and remanded for a new trial because it concluded that the jury instructions on the issue of self-defense were "confusing, misleading, and erroneous." Barnes v. State, 868 So.2d 606, 607 (Fla. 1st DCA 2004) (Barnes I). During a hearing before the retrial, the State announced that on retrial it intended to read to the jury the testimony of Barnes from the first trial. Counsel for Barnes conceded that the prior testimony was admissible, but filed a motion in limine for redaction of portions of the testimony that were allegedly improper. After a hearing, the trial court granted the motion in part and ordered that various portions of the testimony be redacted.
During that hearing, the State also informed the trial court that, in addition to having the testimony of Barnes read to the jury, it intended to introduce the transcript into evidence as an exhibit and requested that the jury have the written transcript of that testimony in the jury room to review during deliberations. Counsel for Barnes objected, contending that this testimony constituted an admission and the defendant had not issued a written admission statement. Barnes asserted that admissions are introduced only through a witness who testifies with regard to what a defendant has stated. The State disagreed and suggested that the transcript was similar to a statement of a defendant that has been given at a police station. The trial court entered a preliminary ruling that the transcript would be admitted into evidence to be utilized as an exhibit.
During the retrial and before the State actually read the transcript, counsel for Barnes again objected to admission of the transcript into evidence. Counsel explained:
[T]he problem we see is the same problem as exists when you let [a] videotaped deposition go back and that is, that the jury  it's the only trial testimony that the jury will have in front of them and they therefore give it undue weight and too much attention compared to all the other evidence in the case. Especially when they have heard it read by question and answer in the courtroom.
The State responded that it was necessary for the jury to have the written transcript of the prior testimony during deliberations to afford the jury with a document to compare the prior testimony with the prior written statement Barnes provided to law enforcement officers. The State contended that the written transcript of testimony constituted a statement against interest because it was in conflict with the prior written statement Barnes had given to the police. The State emphasized that the jury would not be informed that the written transcript was testimony from a prior trial. The trial court overruled the objection, and the testimony of Barnes from the first trial was subsequently read to the jury. One assistant state attorney read the questions and a different assistant state attorney responded to the questions by reading the responses of Barnes during the initial trial.
The State then sought to place the written transcript of testimony into evidence as an exhibit. Barnes again objected and asserted that this would be the only testimony *335 from the trial that would be taken to the jury room and it would, therefore, be unduly emphasized over other evidence and testimony. The trial court overruled the objection and concluded that this prior trial testimony constituted a sworn statement which contained admissions. The trial court expressed the belief that the introduction into evidence of a written transcript of a defendant's prior trial testimony as an exhibit was distinguishable from transcribing the testimony of other witnesses and admitting those transcripts into evidence and sending them back to the jury room with the jury for deliberations.
During closing argument, the State referred to and argued the discrepancies it perceived between the prior testimony of Barnes and her written statement to the police. The jury returned its verdict and convicted Barnes of second-degree murder and found that she discharged a firearm during the crime. The trial court sentenced Barnes to twenty-seven years' incarceration with a twenty-five-year mandatory minimum.
On appeal, the First District Court of Appeal affirmed the conviction and sentence. See Barnes v. State, 922 So.2d 380 (Fla. 1st DCA 2006) (Barnes II). The First District held that the trial court did not abuse its discretion when it allowed the jury to take the written transcript of the defendant's prior trial testimony into the jury room as an exhibit in evidence:
The trial judge properly admitted the statements in question as an exhibit of numerous admissions made by the Appellant. See Delacruz v. State, 734 So.2d 1116, 1122 (Fla. 1st DCA 1999) (finding that defendant's prior statements, whether exculpatory or not, were admissible against defendant as admissions under section 90.803(18), Florida Statutes (citing Charles W. Ehrhardt, Florida Evidence § 803.18, at 733-34 (1999 ed.))). The fact that the State published the exhibit to the jury does not turn the exhibit into "testimony." Accordingly, the trial judge acted within his discretion to allow the jury to take the exhibit into the jury room. See Fla. R.Crim. P. 3.400(a)(4) (permitting the judge to allow "all things received into evidence other than depositions" into the jury room).
Id. at 382.
This Court granted review of the decision of the First District on the basis that it expressly and directly conflicts with the decisions in Young v. State, 645 So.2d 965 (Fla.1994), and Janson v. State, 730 So.2d 734 (Fla. 5th DCA 1999), review denied, 767 So.2d 457 (Fla.2000). See Barnes v. State, 948 So.2d 758 (Fla.2007) (table). In Young, this Court held that trial testimony presented through videotape to a jury should not also be permitted in the jury room as an exhibit, and further that videotaped out-of-court interviews with child victims are not allowed into the jury room during deliberations. See 645 So.2d at 967. The Fifth District in Janson relied upon Young when it held that the trial court erred when it allowed the written transcript of the testimony of two witnesses into the jury room. See 730 So.2d at 734-35.

ANALYSIS
Both parties agree that the defendant's testimony from her first trial was, most assuredly, admissible in the retrial of the second-degree murder charge. See State v. Billie, 881 So.2d 637, 639 (Fla. 3d DCA 2004) (quoting Harrison v. United States, 392 U.S. 219, 222, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968) for the proposition that "a defendant's testimony at a former trial is admissible in evidence against him in later proceedings"). In Billie, the Third *336 District explained that under the Florida Evidence Code, prior testimony is admissible in a subsequent proceeding as an admission by the defendant. See id.; § 90.803(18), Fla. Stat. (2003). The discrete issue presented by the instant case is not whether the prior testimony was admissible, but whether the trial court should have admitted into evidence a written transcript of the defendant's prior trial testimony after it had actually been read during the retrial proceedings, thereby allowing the jury access to and use of that written transcript of testimony during deliberations.
Admissibility of the Transcript into Evidence
A trial court ruling with regard to the admissibility of evidence is reviewed under the abuse of discretion standard. See Alston v. State, 723 So.2d 148 (Fla. 1998). Florida Rule of Criminal Procedure 3.400, "Materials to the Jury Room," provides that a trial court has the discretion to allow the jury to take into the jury room "all things received into evidence other than depositions." Fla. R.Crim. P. 3.400(a)(4) (emphasis supplied). For purposes of our decision today, we must decide whether the written transcript of the prior trial testimony was a "thing" that should have been received into evidence after it had already been read during the trial proceedings as testimonial evidence. We conclude that it was not.
We commence our analysis by noting that, unlike a signed confession, a transcript of prior testimony is not generally considered physical evidence in a criminal case. As noted by the Illinois Supreme Court, signed confessions constitute valuable physical evidence and are appropriately submitted to the jurors during deliberations along with any other properly admitted physical evidence:
[A] signed confession which has been shown by the State to be free from coercive conditions is among the strongest kinds of physical evidence the prosecution may produce, and when the tests of admissibility have been met and the defense afforded the full opportunity to point out any circumstances which may go to undermine the credibility of the confession in the eyes of the jury, there appears to us no valid reason to preclude the written confession from going to the jury room along with other exhibits which the trial judge may deem proper. . . . Nor, in our opinion, is there a logical reason to distinguish between a written confession and other physical evidence of a concededly damaging nature such as murder weapons, bloodstained clothing or gruesome photographs insofar as their presence in the jury room is concerned. In our judgment all should be governed by the general rule governing exhibits of physical evidence which may be taken to the jury room if the sound discretion of the trial judge dictates that they bear directly on the charge.
People v. Caldwell, 39 Ill.2d 346, 236 N.E.2d 706, 714 (1968) (emphasis supplied).
On the other hand, this Court and a number of other jurisdictions have held that depositions and other evidence of a testimonial nature should not be provided to a jury during deliberations. Moreover, despite the specific preclusion provided by rule 3.400(a)(4), this subdivision has not been exclusively limited to depositions. For example, in Young, this Court held that videotaped statements by child victims of alleged sexual abuse could not be taken into the jury room during deliberations. See 645 So.2d at 967. We explained:

*337 When introduced to prove sexual abuse, the videotaped interviews of children are self-serving in the sense that they are testimonial in nature and assert the truth of the children's statements. They are more akin to depositions de bene esse in which testimony is preserved for later introduction at the trial.
. . . [A]llowing a jury to have access to videotaped witness statements during deliberations has much the same prejudicial effect as submitting depositions to the jury during deliberations. By permitting the jurors to see the interview once again in the jury room, there is a real danger that the child's statements will be unfairly given more emphasis than other testimony.

Id. (emphasis supplied). The Fifth District relied upon the Young decision in Janson when it concluded that the written transcripts of the testimony of two witnesses should not have been allowed into the jury room. See 730 So.2d at 734-35.
A number of other jurisdictions have precluded the use of written forms of testimonial evidence in the jury room during deliberations.[1] One factually relevant decision in the case we decide today is the decision of the District of Columbia Court of Appeals in Fuller v. United States, 873 A.2d 1108 (D.C.2005). In Fuller, the defendant asserted on appeal that the trial court had erred when it allowed the jury to possess a written transcript of his prior testimony during deliberations. See id. at 1115. The testimony had also been read to the jury during the trial. See id. at 1112. The Court of Appeals held that the trial court should not have allowed the jury access to the written transcript:
Although courts are not uniform, most consider that it is within the discretion of the judge to allow "many types of tangible exhibits [and] written exhibits generally except for those that are testimonial in nature. . . . The reason underlying this latter exception is that writings which are merely testimony in a different form should not, by being allowed to the jury, be unduly emphasized over the other purely oral testimony in the case." 2 McCormick on Evidence § 217 at 30 (John William Strong, ed., 5th ed.1999) (emphasis added). A clear distinction is drawn between admitting previous testimony (from a transcript) as evidence, and providing the transcript to the jury:
[W]ritten testimony is not to be read by the jury in the jury room but is to be read to them in open court, subject to all objections to be made, the same as if the witness were present and testifying. The written record thereof should not be taken to the jury room where the jury might read it. A written instrument, made an exhibit in the cause but not consisting of testimony of a witness in the case, may of course be taken to the jury room the same as *338 maps, diagrams, and other exhibits. But the testimony of a witness is in a different category. . . . If . . . the jury takes the depositions or transcript to be read and discussed while the oral evidence contra has in a measure faded from the memory of the jurors, it is obvious that the side sustained by written evidence is given an undue advantage. The law does not permit depositions or witnesses to go to the jury room. Why should a witness be permitted to go there in the form of written testimony?

State v. Solomon, 96 Utah 500, 87 P.2d 807, 811 (1939).
Id. at 1116-17. We agree with this analysis from the District of Columbia Court of Appeals. Accordingly, we conclude that when prior testimony has been read to a jury during the trial proceeding as testimonial evidence, a written transcript of that testimony is not and should not be considered a "thing" that should be entered into evidence as an exhibit and provided to the jury during deliberations pursuant to rule 3.400(a)(4).
Moreover, in Fuller, the Court of Appeals noted that even enhanced concerns arise when the prior testimony of a defendant is provided to the jurors in transcript form as compared to the prior testimony of a witness:
The risk that the jury might give undue weight to some testimony because it is available in transcript form over jurors' recollection of other, untranscribed trial testimony is heightened where the transcript is of the testimony of the defendant, because a defendant's admissions normally carry particular force with a jury. Moreover, there is a Fifth Amendment concern, for even if a defendant's testimony from a prior trial has been properly admitted as evidence, a transcript of that testimony might receive greater scrutiny  and invite impermissible inferences  where the defendant has exercised his constitutional right not to take the stand at a second trial.
Id. at 1117. There are numerous factors that may influence whether a defendant decides to testify during any given proceeding. The nature of the proceeding, the composition of the jury, and the prior trial experience are only a few of those variable factors. The Fuller court reasoned that it is far more questionable for jurors to receive a written transcript of a defendant's prior testimony than that of a witness. The Fuller court determined that when the prior testimony of a defendant is to be provided in transcript form to jurors during deliberations, the trial court should give the jurors specific instructions with regard to the use of the transcript:
A trial judge should first consider whether the jurors have a particular need for the transcript, and if so, give a special instruction cautioning against unduly emphasizing the transcript over other evidence. In a case where the transcript is of the defendant's testimony, the judge should further caution the jury, if requested by the defense, against making impermissible inferences contrasting the defendant's decision to testify at an earlier trial and his choice not to testify at the second trial.
Id. at 1118 (citations and footnote omitted).
We conclude that some of the concerns discussed in Fuller with regard to the constitutional rights of a defendant are also compelling. The Fifth Amendment to the United Constitution provides that no defendant "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. Under the Florida Constitution, a defendant has the right to testify in his or her defense. See art. I, § 16, Fla. Const. Based on the specific *339 circumstances presented by each trial (e.g., the timing, the evidence offered by the State, the jurors selected), a defendant may choose to testify or not. Nonetheless, if for some reason the result of that first trial is inconclusive, or the defendant is awarded a new trial based upon trial-court error, the Fifth Amendment right to remain silent under the United States Constitution is implicated and remains intact during all subsequent proceedings. However, if a defendant would choose to exercise the right to remain silent in a subsequent proceeding, and the State allowed to introduce into evidence a written transcript of the prior testimony as an exhibit, questions could arise in the minds of jurors as to why the defendant is not testifying in the current proceeding when he or she chose to do so previously. Although the parties may give great effort to conceal the fact that the testimony is actually from a prior trial, as occurred in the instant case, the jurors will most likely realize that on some occasion in the past the defendant elected to offer an explanation and discuss what happened with regard to the alleged crime, but currently declines to do so. We conclude that when a jury is provided the prior trial testimony of a defendant which is read during trial and is also given that testimony in written transcript form to scrutinize and consider as a tangible exhibit during deliberations, in the absence of any other testimony offered during the trial, the choice of the defendant to remain silent may, as recognized in Fuller, "invite impermissible inferences." 873 A.2d at 1117. We decline to issue a principle of law that could potentially and very realistically jeopardize or denigrate the Fifth Amendment right of a defendant to remain silent during trial. Therefore, we hold that a transcript of the prior trial testimony of a defendant, even more so than that of a witness, is not a "thing" to be admitted into evidence as an exhibit for jurors to examine during deliberations after the testimony has been read during the trial proceedings as testimonial evidence. See Fla. R.Crim. P. 3.400(a)(4).
In light of the foregoing, we hold that it was an abuse of discretion for the trial court to place a written transcript of the defendant's prior testimony into evidence after it had been read to the jury and also an abuse to allow the jurors to possess and utilize this transcript during deliberations.
Harmless Error
Our inquiry does not end with our conclusion that an abuse of discretion has occurred. We must next consider whether the erroneous admission of the written transcript into evidence and the use of the written transcript by the jurors during deliberations constitute harmless error. We have explained the harmless error test as follows:
Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986) (emphasis supplied).
In Fuller, the District of Columbia Court of Appeals concluded that even though the trial judge erroneously provided the jury with the written transcript of the defendant's prior testimony during deliberations, the error did not warrant reversal of the conviction:
Appellant claims that the prosecutor's frequent references to his testimony at *340 closing demonstrate that it was used against him and further directed the jury to focus on the transcript. Appellant's testimony from the first trial that was read and given to the jury in transcript form, however, was not inculpatory, but consistent with his defense in the second trial that he had been misidentified and that Jones, the person who was with him at the time of the shooting, had shot Murray. Other than the general argument that the jury is prone to overemphasize transcribed testimony, appellant has not referred us to any portion of the transcript that  if given particularized scrutiny by the jury  would have seriously prejudiced his defense. The jury's reading of the transcript would, if anything, have presented appellant's case again while the jurors deliberated, as defense counsel urged them to do during closing argument. Although the trial judge did not specifically instruct the jury with respect to the transcript of appellant's prior testimony, he did instruct the jurors that they must not draw any inference of guilt from appellant's decision not to testify at the second trial. Finally, we consider the strength of the government's case. While there were some inconsistencies in their accounts, two eyewitnesses who knew appellant from the neighborhood positively identified him as the shooter. Several other witnesses provided a motive for the shooting and another said appellant had confessed to having shot Murray, albeit in self-defense. Considering the matter in the context of the entire trial, we are confident that the jury's access to a transcript of the non-testifying appellant's testimony from a previous trial did not sway the verdict, and that any error in providing the transcript was therefore harmless.
873 A.2d at 1118 (emphasis supplied).
Unlike the transcript in Fuller, which the Court of Appeals deemed not to be inculpatory, see id., the State here utilized the written transcript of the testimony to demonstrate that Barnes had made inconsistent statements with regard to the facts of the crime when she gave her statement to police when compared with her testimony at her first trial. The key fact upon which the State primarily focused was the location of a gun just prior to the shooting. The location of the gun was most relevant to the defendant's assertion that when she shot her husband, her actions were spontaneous or reflexive in nature. The State noted that in the original written statement given to police, Barnes stated that the gun was on the passenger seat of the vehicle which she occupied at the time she shot her husband. However, when she testified at the first trial, she stated that the gun was in her purse. During closing argument, the State specifically directed the attention of the jury to this inconsistency:
Whether it was on the seat or in the purse. The gun. Her original statement, her written statement to the police indicated that the gun was on the seat, however, in her later statement on April 24, 2002, all of a sudden it's in her purse, sitting on top of her purse where it had stayed from the time she put it in her purse, walked through the house, pass[ed] Gregory Barnes, out to the car, got in the car, threw her purse there and the gun is still conveniently on top of it ready for her to just grab and shoot. That's inconsistent.
It's inconsistent to what she said that night. It's inconsistent with the details of what had to occur for this to happen and how fast it had to occur.
Her explanation for that inconsistency, well, in the purse which is on the seat. No. That's not something you leave out. That's not something that *341 someone that after going through her written statement . . . leaves out. She didn't leave out that it was in her purse. It was never in her purse. It was right there on the seat ready to shoot him in the face.
During rebuttal, the State again focused on the inconsistency:
And ladies and gentlemen, the critical distinction of the gun being in the seat as she told the police  it was reflected in their notes as read from the stand. It is reflected in her written statement and then in her testimony from the year 2002  in the first part of questioning she said it was on the seat. Later in questioning when asked why would you carry a loaded gun around walking through your household to get in a car to go drive to your peaceful spot downtown, why would you do that? Then her answer changed to oh, it was in the purse.
But ladies and gentleman, I invite you to look at that picture. The purse is either zipped up or so narrow at the top that that gun was nowhere near the top of that purse. It was on the seat or maybe in her lap, but it wasn't in that purse.
The State referred to this distinction as "critical" at least two times during rebuttal. Finally, and importantly, the State urged the jurors to "[l]ook at the quotes in the transcript." These closing argument excerpts clearly demonstrate that the State focused heavily on asserted inconsistencies in the two statements during closing arguments. Additionally, the jurors never received an instruction from the trial court that they should not emphasize the written transcript of the testimony over other evidence offered during trial. Cf. Fuller, 873 A.2d at 1118 (holding that, under similar circumstances, the trial court should provide such an instruction to the jurors).
It is impossible here, as it will most often be the situation, to divine what actually transpired when the jury retired to deliberate on the issue of the guilt or innocence of Barnes. It is for these reasons that we cannot say beyond a reasonable doubt that the presence of both the statement to police and the written transcript of her prior testimony in the jury room during deliberations, where the inconsistencies between these two documents could be viewed side by side, did not contribute to the guilty verdict. Therefore, we conclude that the State has not sustained its burden to demonstrate that the trial-court error in this case was harmless. See DiGuilio, 491 So.2d at 1139; see also Young, 645 So.2d at 968 (holding that while allowance of videotaped statements of children in the jury room during deliberations might not constitute fundamental error, it could not be deemed harmless).
Accordingly, we are compelled to quash Barnes II and remand for a new trial.
It is so ordered.
WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] See, e.g., Pearson v. State, 278 Ga. 490, 604 S.E.2d 180, 183 (2004) ("`[W]ritten testimony,' which merely duplicates a witness' oral testimony or substitutes as a written record of his testimony should be withheld from the jury."); Wright v. Premier Elkhorn Coal Co., 16 S.W.3d 570, 572 (Ky.Ct.App.1999) ("In general, testimonial evidence (such as a copy of a deposition) is not allowed in a jury room. The rationale behind banning such testimonial evidence from the jury room is the likelihood that the triers of fact may place more emphasis on written rather than spoken words since the written words are readily before them physically while the spoken words uttered at trial can only be conjured up by memory."); State v. Brooks, 675 S.W.2d 53, 57 (Mo.Ct.App.1984) ("[T]he use of the depositions at trial simply took the place of testimony of live witnesses and, therefore, was testimonial in nature. Generally, exhibits . . . which are testimonial in nature may not be given to the jury during their deliberations. . . . ").