VILLANTI, Judge.
After a jury convicted David Rolon of second-degree murder with a firearm, the trial court sua sponte granted him a new trial based on the ineffective assistance of his original trial counsel.[1] Despite its explicit finding that trial counsel provided ineffective assistance during the direct and cross-examination of Rolon at his first trial, the trial court nevertheless allowed the State to use Rolon’s testimony from his first trial during its case-in-chief in the second trial. In these highly unusual circumstances, we conclude that the admission during the second trial of Rolon’s testimony from his first trial violated Ro-lon’s Sixth Amendment right to the effective assistance of counsel. Therefore, we reverse and remand for a third trial.
Rolon was charged with one count of second-degree murder after a dispute with his neighbor ended up with the neighbor shot dead on his own doorstep. At the first trial, Rolon’s defense was that he did not have a gun, that a gun possessed by either the victim or the victim’s friend went off during a struggle between Rolon and the victim, and that the victim’s girlfriend had pinned the shooting on Rolon to protect her boyfriend and/or his friend.
Before the State called its final witness at the first trial, the trial court held a brief colloquy with Rolon concerning his right to testify. The court explained to Rolon that if he testified, the jury would be permitted to know whether he had been convicted of a felony and, if so, how many times. If he answered truthfully, the jury would never know the nature of the convictions. However, if he did not answer truthfully, the jury would learn the nature of the convictions. The court told Rolon that the decision to testify was entirely his but that he should discuss it with his lawyer. Rolon stated that he had no questions about his right to testify and that he understood his rights. The court did not question Rolon concerning whether he had, in fact, dis *241 cussed the issue with his attorney, nor did it ask whether Rolon intended to testify.
The next morning, the State called its final witness and then rested. The trial court went directly into the defense case, and Rolon called his sister to testify. She testified that she saw another individual on the porch of the victim’s house before the shooting. However, she also testified that Rolon told her that he had “turned the gun around on the other guy.”
The defense then called Rolon to the stand. The trial court did not conduct any further colloquy with Rolon prior to him taking the stand. During his testimony, Rolon testified that he and the victim got into a confrontation, that the victim reached for something in his pocket, that Rolon struggled with the victim over the item, and then “[s]omething just went pow on this side of my face right here.” Rolon testified that he did not know where the shot came from and thought that possibly it was meant for him. Rolon admitted that he ran away, hid from the police, and dyed his hair after the shooting.
Despite Rolon’s testimony concerning his struggle with the victim and Rolon’s sister’s testimony concerning him turning the gun on the victim, defense counsel waived the jury instruction concerning the justifiable use of deadly force. In closing, defense counsel argued that there were several “reasonable” scenarios other than the one presented by the State that would explain the events that had occurred and thus the State had not proved its case beyond a reasonable doubt. Nevertheless, the jury returned a verdict of guilty.
Within the time for granting a motion for new trial, the trial court set a status hearing and sua sponte found that Rolon’s counsel had been ineffective at the first trial. Concerning Rolon’s testimony, the trial court specifically found that defense counsel’s direct examination of Rolon was ineffective as a matter of law. The court noted that defense counsel elicited testimony that he had discussed the case with Rolon for less than five minutes. In addition, the court found that “[t]he unprepared Defendant obviously did not know what questions his counsel would ask him, and he made unsolicited prejudicial statements during direct and cross examination.” Concluding that Rolon “did not receive a fair and impartial trial” due to defense counsel’s ineffectiveness, the trial court granted Rolon a new trial. The State elected not to appeal this ruling even though it had the authority to do so. See Fla. R.App. P. 9.140(c)(1)(C) (permitting the State to appeal orders granting a new trial).
Prior to the start of Rolon’s second trial, he moved in limine to prevent the State from using his testimony from the first trial during its case-in-chief in the second trial. Rolon conceded that section 90.804(2)(a), Florida Statutes (2008), would generally permit the State to introduce his former testimony at his second trial. However, he argued that the use of his former testimony under these circumstances would infect the second trial with the same ineffectiveness that had tainted the first trial and would result in the denial of his Sixth Amendment right to counsel. After a hearing, the trial court denied the pretrial motion, finding that Rolon had voluntarily testified at his first trial. The court’s order did not directly address Ro-lon’s argument concerning the ineffectiveness of his prior counsel.
Immediately before the State sought to read the transcript of Rolon’s former testimony during the second trial, defense counsel again objected to the State’s use of that testimony. At that point, the trial court permitted defense counsel to call Rolon to testify concerning his preparation with his prior attorney. Rolon testified *242 that he had spoken with his prior attorney for only about five' minutes about the case before he was called to testify. The remainder of the time was spent with the attorney asking him for money. Rolon testified that he never discussed the pros and cons of testifying with his attorney. Rather, his attorney “just waited until the trial came, the trial started, and he put me on the stand.” At first, Rolon said that he did not recall the judge asking him whether he understood that the right to testify was his alone and that only he could make the decision whether to testify, but he later changed his mind and said that he did recall that question but that he didn’t really understand what that meant. He also said that if he had fully understood his rights concerning testifying, he would not necessarily have done anything differently. Instead, he “would have had to take the time to decide that.” Based on this testimony, the trial court reaffirmed its pretrial ruling and permitted the State to read Rolon’s testimony from his first trial during its case-in-chief in the second trial. Rolon was again convicted.
In this appeal, Rolon contends that the trial court abused its discretion by permitting the State to introduce his testimony from the first trial during its case-in-chief in the second trial under these unique circumstances. Rolon admits that the rules of evidence generally permit the introduction of testimony from a prior trial. However, he argues that in this situation, when the new trial was granted based on ineffective assistance of counsel that affected the defendant’s trial testimony and when the State chose not to appeal the order granting the new trial, the use of the “tainted” testimony in the second trial violates both the Fifth Amendment right against self-incrimination and the Sixth Amendment right to counsel and thus constitutes an abuse of discretion. We find no Fifth Amendment violation on the facts here; however, we agree that the court’s ruling resulted in a violation of Rolon’s Sixth Amendment right to counsel.
Fifth Amendment
Rolon contends that the introduction of his testimony from the first trial during the second trial violated his Fifth Amendment right against self-incrimination because his decision to testify at the first trial was solely the product of his counsel’s ineffectiveness. On the facts here, we disagree.
“[T]he general evidentiary rule [is] that a defendant’s testimony at a former trial is admissible in evidence against him in later proceedings.” Harrison v. United States, 392 U.S. 219, 222, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). However, there is no question that the Fifth Amendment is implicated when the State seeks to introduce a defendant’s prior trial testimony during a retrial. See Barnes v. State, 970 So.2d 332, 339 (Fla.2007). The question of whether the Fifth Amendment bars the use of the defendant’s testimony from the first trial during the second trial focuses on whether the defendant’s testimony at the first trial was voluntary and whether its introduction at the second trial would mislead the jury or confuse issues. See State v. Mosley, 760 So.2d 1129, 1131 (Fla. 5th DCA 2000). Unless the defendant’s prior testimony was involuntary or compelled in a constitutional sense, the use of that testimony in a subsequent trial does not violate the defendant’s Fifth Amendment rights.
When a defendant raises a Fifth Amendment issue concerning the use of his prior testimony in the context of a claim of ineffective assistance of counsel, the essence of that claim is usually that the action or inaction of his attorney deprived him of his ability to intelligently choose whether to exercise or waive his Fifth *243 Amendment right to testify in his own defense. See, e.g., Beasley v. State, 18 So.3d 473, 495 (Fla.2009). However, as with all other claims of ineffective assistance of counsel, the defendant must demonstrate prejudice, i.e., that he would have made a different decision about testifying had counsel properly discussed and advised him of his rights. See Lott v. State, 931 So.2d 807, 817 (Fla.2006); Oisorio v. State, 676 So.2d 1363, 1364-65 (Fla.1996) (rejecting an argument that a defendant alleging that counsel interfered with his or her right to testify must prove only deficient performance and holding that “to obtain postconviction relief, a defendant claiming his or her right to testify was violated must show that counsel’s performance was deficient and that the deficient performance prejudiced the defense”).
In Beasley, the supreme court rejected Beasley’s claim of ineffective assistance of counsel resulting in his failure to testify at trial because Beasley did not say “that he would have testified during the trial if counsel had spent more time preparing him.” Beasley, 18 So.3d at 496. Similarly, in this case, Rolon did not testify that he would have elected not to testify had defense counsel more thoroughly prepared him. Instead, Rolon specifically testified that he might have made the same decision even if counsel had more fully explained the pros and cons of testifying. Given this testimony, Rolon cannot establish the prejudice necessary to show that counsel’s ineffectiveness interfered with his Fifth Amendment right to such an extent that the use of that prior testimony should have been precluded.
Moreover the record supports the trial court’s conclusion that Rolon’s decision to testify on his own behalf at his first trial was not involuntary in a constitutional sense. The record shows that Rolon was fully informed of the pros and cons of testifying before he took the stand. The trial court conducted its own colloquy with Rolon and explained to him what the jurors would and would not learn about him if he chose to testify. The trial court also explained that the jurors would be told that they could not use a decision not to testify against Rolon. This colloquy occurred at the end of the trial day, so Rolon also had the evening to think about his decision and to discuss it further with his counsel. The following day, Rolon took the stand in his own defense, and there is no evidence that he did so involuntarily or under duress. Instead, it appears from the record that Rolon voluntarily took the stand to explain his version of the events that occurred and to contradict the events as related by the victim’s girlfriend. Thus, there is simply no evidence in the record that Rolon’s decision to testify at his first trial was involuntary, and therefore the admission of Rolon’s testimony from that trial during his second trial did not violate his Fifth Amendment privilege against self-incrimination. Hence, we do not reverse Rolon’s conviction on Fifth Amendment grounds.
Sixth Amendment
Alternatively, Rolon contends that the introduction of his testimony from the first trial during the second trial violated his Sixth Amendment right to counsel because the substance of his testimony at the first trial was tainted by his counsel’s ineffectiveness. On this basis, we agree.
The parties do not cite, nor have we been able to find, any Florida authority that deals with this exact issue. However, authority from other jurisdictions explains the nature of the error in this case. For example, in People v. Mora, 120 Cal.App.2d 896, 262 P.2d 594 (1953), disapproved on other grounds, People v. Van Eyk, 56 Cal.2d 471, 15 Cal.Rptr. 150, 364 *244 P.2d 326 (1961), the defendant testified at a preliminary hearing without the benefit of counsel. The charges against him were initially dropped but subsequently refiled. In the trial on the refiled charges, the State sought to use Mora’s uncounseled testimony from the earlier preliminary hearing. The trial court permitted the State to do so, and Mora was convicted. On appeal, the court reversed, holding that the State’s use of Mora’s earlier testimony was a violation of his Sixth Amendment rights and explaining:
To permit such statements to be introduced would do violence to all the rules of fair play. To condone such a practice could render futile the right to the aid of counsel so carefully preserved by our Constitutions, our statutes and our decisions. It would open the gate to unlawful preliminary hearings at which damaging statements would be elicited; to be followed by properly conducted proceedings leading to trial whereat the statements so obtained could be used for conviction. The United States Supreme Court has held in Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 [ (1952) ], 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396, that the wrong in unlawfully obtaining evidence may be so great that its use thereafter would amount to a denial of due process. Denying the right to counsel in criminal proceedings is the denial of due process. People v. Zammora, 66 Cal.App.2d 166, 234, 152 P.2d 180 [ (1944) ]. Giving to the adjudication that appellant’s right to counsel was denied! ] the weight to which it is entitled!,] we think the trial court erred in admitting the statements made by !the] accused at the first preliminary. To admit evidence so obtained into the subsequent trial was to carry into that trial the same denial of due process which the court had already adjudicated had occurred at the preliminary.
Id. at 596 (emphasis added). Thus, the court reversed and remanded for a new trial at which the uncounseled testimony would be inadmissible during the State’s case-in-chief.
While Mora dealt with the complete denial of counsel, a similar result was reached in a case involving ineffective assistance of counsel. In United States v. Murray, 52 M.J. 671 (N.M.Ct.Crim.App.2000), the military defendant was convicted at his first court martial where he was represented by civilian retained counsel. On appeal, the court reversed, finding that the defendant “was prejudiced by his counsel’s ineffective assistance.” Id. at 672. This finding was premised in part on counsel’s failure to adopt a sound theory of defense, which only exacerbated problems with the defendant’s testimony. On remand, despite the appellate court’s finding of ineffective assistance of counsel, the government sought to use the defendant’s testimony from his first court martial during the new proceedings, and the trial court agreed. On appeal from the new conviction, however, the appellate court again reversed. In doing so, the court stated:
Additionally, although there was no illegally obtained evidence introduced by the Government which precipitated the appellant’s testimony, that testimony was the direct result of the denial of the appellant’s Sixth Amendment right to the effective assistance of counsel. Allowing the Government to use that testimony on the merits!J brought the taint of the constitutional error of the first trial into the second trial. In Harrison, the Supreme Court found that “[t]he exclusion of an illegally procured confession and of any testimony obtained in its wake deprive[d] the Gov *245 ernment of nothing to which it ha[d] any lawful claim and create[d] no impediment to legitimate methods of investigating and prosecuting crime [and] ... no more than restore[d] the situation that would have prevailed if the Government had itself obeyed the law.” Harrison [v. United States], 392 U.S. 219] at 224, 88 S.Ct. 2008, 20 L.Ed.2d 1047 [ (1968) ]. We find that the exclusion of testimony obtained in the wake of the denial of an individual’s Sixth Amendment right to the effective assistance of counsel deprives the Government of nothing to which it has any lawful claim and creates no impediment to legitimate methods of investigating and prosecuting crime, and no more than restores the situation that would have prevailed if the appellant had not been so denied.
Id. at 675-76 (emphasis added). Thus, again, the court reversed and remanded for a new court martial.
The import of these two cases is that a defendant’s testimony given in violation of his Sixth Amendment right to counsel may not generally be used against him in a subsequent proceeding. This is true whether the Sixth Amendment violation springs from a complete lack of counsel or from ineffective assistance of counsel. However, this rule applies only when counsel’s ineffectiveness directly affects the defendant’s testimony and thereby taints the entire trial. Compare People v. Duncan, 173 Ill.App.3d 554, 123 Ill.Dec. 422, 527 N.E.2d 1060, 1062 (1988) (finding that the defendant had received ineffective assistance of counsel at his first trial that had “colored the entire proceeding” such that his testimony from that trial, while admissible as impeachment, could not be used against him during the State’s case-in-chief in the new trial), with United States v. Nell, 570 F.2d 1251, 1260 (5th Cir.1978) (holding that defendant’s testimony from his first trial could be used by the government in its case-in-chief on remand because the only ineffectiveness of counsel was during jury selection and there was no evidence that the ineffectiveness “tainted the entire trial”).
In Rolon’s case, as in Murray, Ro-lon was deprived of his Sixth Amendment right to the effective assistance of counsel during his direct and cross-examination in his first trial. The trial court in this case specifically found that counsel was ineffective in failing to prepare Rolon to testify and in eliciting damaging testimony from him, and it included this specific finding in its order granting Rolon a new trial, which the State elected not to appeal. In light of this clear finding of ineffectiveness relating specifically to Rolon’s testimony, the trial court’s subsequent order allowing the State to introduce his testimony from the first trial during its case-in-chief in the second trial brought the taint of that Sixth Amendment violation, and its concomitant due process violation, from the first trial directly into the second trial. Further, as is evident from the trial court’s order granting the new trial, trial counsel’s ineffectiveness pervaded and tainted the entire first trial. To remedy this Sixth Amendment violation, Rolon is entitled to a new trial at which the State may not use his testimony from the first trial during its case-in-chief.
Reversed and remanded for a new trial.
LaROSE and MORRIS, JJ., Concur.

. Appellate counsel did not represent Rolon during either of his trials.